204                  October 15, 2025              No. 898

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Robert Cole TOZER,
Personal Representative of the
Estate of Joel Valdez Covarrubias, deceased,
*Plaintiff-Appellant,*

*v.*

KATERRA CONSTRUCTION LLC,
a foreign limited liability company;
Katerra, Inc., a foreign corporation;
Amberglen South Sr Development, LLC,
an Oregon limited liability company;
NW Framing & Const LLC,
an Oregon limited liability company;
Six Stars Construction LLC,
an Oregon limited liability company;
and Pablo Ortiz Franco, a resident of Oregon,
*Defendants-Respondents,*

*and*

Niceforo Ruben Ortiz FRANCO,
a resident of Oregon,
*Defendant.*

Niceforo Ruben Ortiz FRANCO,
*Third-Party Plaintiff,*

*v.*

Erin Denise JORDAN,
*Third-Party Defendant.*

Multnomah County Circuit Court
22CV14786; A183798

Beth A. Allen, Judge.

Argued and submitted September 9, 2025.

J. Randolph Pickett argued the cause for appellant. Also on the opening brief were Rachel M. Jennings and Pickett Dummigan Weingart LLP. Also on the reply brief were Kimberly O. Weingart, Kyle T. Sharp, Mayra A. Ledesma,

Juliana B. Minn, and Pickett Dummigan Weingart LLP; Lourdes Sánchez Marte, Apolinar Montero-Sánchez, and The Law Office of Lourdes Sánchez PC.

Jonathan Henderson argued the cause for respondents. Also on the brief were Earle & Xóchihua, P.C.; Tessan Wess and Gordon Rees Scully Masukhani, LLP; Kenneth E. Hepworth and Wood Smith Henning & Berman, LLP; John Barhoum and Chock Barhoum LLLP; James R. Lawler and Schanz Lawler, PC; Michael A. Yoshida and MB Law Group, LLP.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

In this wrongful death action, plaintiff appeals a limited judgment dismissing Katerra Construction LLC and Katerra, Inc. (Katerra), Amberglen South SR Development, LLC (Amberglen), NW Framing & Const LLC (NW Framing), Six Stars Construction LLC (Six Stars), and Pablo Ortiz Franco (Pablo Franco) (collectively, defendants) from the action after granting their motions for summary judgment. Plaintiff is the personal representative of the estate of Joel Valdez Covarrubias, who was riding in a van to a construction site when the van was involved in a traffic accident, and Covarrubias died about a year later from his injuries. Having reviewed the record and the parties' arguments on appeal, we affirm.

*Standard of Review.* "We review the trial court's ruling on a motion for summary judgment to determine whether there is a genuine dispute of material fact over issues raised in the motion and whether the moving party is entitled to judgment as a matter of law." *Austin v. Walmart, Inc.*, 340 Or App 279, 281, 570 P3d 642 (2025). "There is no genuine issue of material fact if, based on the record viewed in the light most favorable to the adverse party, no reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Prince v. Joe Cronin Logging, LLC (A182528)*, 342 Or App 288, 292, ___ P3d ___ (2025).

*Facts.* The following facts are not disputed. Amberglen was the owner of the construction project, Katerra was the general contractor, NW Framing and Six Stars were subcontractors, and Pablo Franco was an employee of Six Stars. The project consisted of the construction and development of buildings in Hillsboro, including a senior living building and a residential building. The jobsite took up four city blocks and had a secure fence around it. Pablo Franco worked for Six Stars as a supervisor or foreman. Pablo Franco's brother, Niceforo Ruben Ortiz Franco (Ruben Franco), worked for Six Stars as a framer.

Ruben Franco owned the van involved in the traffic accident that resulted in Covarrubias's death. Ruben

Franco charged Covarrubias $8 per day to give him a ride in the van to and from the worksite. Ruben Franco was driving Covarrubias and three NW Framing workers from Woodburn to the jobsite in Hillsboro when the traffic accident occurred around 6:30 a.m. over two miles from the jobsite. Covarrubias was ejected from the van and suffered serious injuries to which he succumbed about a year later.

The parties dispute who employed Covarrubias. Pablo Franco had told Covarrubias that there was potential work at the project, but Covarrubias did not work for Pablo Franco. Pablo Franco believed Covarrubias worked for NW Framing, but NW Framing denied he was an employee, and Six Stars also denied he was an employee. A state agency investigating the accident concluded that Six Stars employed Covarrubias.

In this wrongful death action, plaintiff set forth counts against defendants for negligence, vicarious liability, and violation of the Employer Liability Law (ELL). Defendants filed motions for summary judgment. After hearings on the motions, the trial court granted them and entered a limited judgment dismissing defendants from the action. We consider whether the trial court erred in granting summary judgment in favor of defendants on the negligence, vicarious liability, and ELL counts.[1]

*Negligence and Vicarious Liability.* Under the first and second counts, plaintiff argues that there are questions of fact as to whether defendants were negligent or vicariously liable for the actions of Ruben Franco, who drove Covarrubias to the jobsite.

Starting with vicarious liability, a principal can be vicariously liable for the torts of its agents. *Vaughn v. First Transit, Inc.*, 346 Or 128, 137, 206 P3d 181 (2009).

---

[1] Plaintiff's first claim for relief is against the driver of the van, Ruben Franco, and that claim is not at issue on appeal. Plaintiff's second and third claims are against defendants. The negligence, vicarious liability, and ELL counts are in the second claim for relief. Under that claim, plaintiff also alleged a violation of the Oregon Safe Employment Act (OSEA). However, in opposing the summary judgment motions below, plaintiff conceded that defendants were not liable to plaintiff under the OSEA. In his third claim for relief, plaintiff asserted a claim against defendants under the Oregon Contractor Registration Act (OCRA). On appeal, plaintiff concedes that the trial court did not err in granting defendants' motions for summary judgment on the OCRA claim.

> "An agent is an employee if the principal has the right to control the physical details of the work being performed by the agent; in other words, the principal directs not only the end result, but also controls *how* the employee performs the work. In contrast, when the agent retains control over the details of the manner in which it performs its duties, that agent is a nonemployee agent."

*Id.* (emphasis in original; citations omitted). When the relationship involves an employee agent, the principal is liable for acts committed within the scope of employment. *Id.* But when a tort is committed by a nonemployee agent, the principal is liable only if the principal "intended or authorized the result or the manner of performance of that act." *Id.* (internal quotation marks and brackets omitted).

"The general rule in this state is that an employee going to or from his work is not in the course of his employment at that time." *Heide/Parker v. T. C. I. Incorporated*, 264 Or 535, 539, 506 P2d 486 (1973); *see Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996) ("injuries sustained while an employee is traveling to or from work do not occur in the course of employment"). There are exceptions to the general rule, such as when "the employer pays extra compensation to cover the cost of transportation or compensates the employee for the period of time when he is going to or from work." *Heide/Parker*, 264 Or at 539.

Here, Six Stars employed Ruben Franco, but there is no evidence that Ruben Franco was acting within the course and scope of his employment when the accident occurred. There is no dispute that it happened at about 6:30 a.m., which was at least half an hour before Six Stars employees were scheduled to begin work, and the accident happened over two miles from the jobsite. Although there are exceptions to the general rule that an employer is not liable for injuries that occur when an employee is commuting to work, there is no indication here that an exception applies. The record is unclear regarding who employed Covarrubias, so we assume that either Six Stars or NW Framing was his employer. The evidence indicates that employees of both Six Stars and NW Framing were responsible for their own transportation to work, that Six Stars and NW Framing did not compensate employees for the costs of commuting

to work, and that neither Six Stars nor NW Framing were aware that Ruben Franco was charging passengers to ride in his van to the jobsite.

In addition, there is no evidence that Six Stars or NW Framing had a right to control how Ruben Franco, Covarrubias, or any other employee commuted to work. *See Norris v. Sackett*, 63 Or App 762, 764, 665 P2d 1262, *rev den*, 295 Or 773 (1983) (no factual basis on which nonprofit could be held vicariously liable for actions of its director who was involved in a traffic accident because the nonprofit did not have a right to control the way in which the director performed his tasks); *see also Gossett v. Simonson*, 243 Or 16, 24-25, 411 P2d 177 (1966) (affirming judgment determining that a negligent driver's employer was not liable to the plaintiff because the employee was not acting within the scope of his employment). Thus, the trial court did not err in granting summary judgment in favor of Six Stars and NW Framing on plaintiff's claims that they were vicariously liable for Ruben Franco's conduct.

With respect to defendants Amberglen and Katerra, who did not employ Ruben Franco, "ordinarily, a principal is not liable for the negligence of a nonemployee, because a principal generally does not have the requisite right of control over those nonemployee agents." *Eads v. Borman*, 351 Or 729, 738, 277 P3d 503 (2012). Here, there is no evidence that Amberglen or Katerra were aware of the commuting arrangement or that they controlled, intended, or authorized it. Pablo Franco, a supervisor at Six Stars, may have been aware that his brother was driving Covarrubias to work, but plaintiff fails to present evidence creating a triable issue as to whether Pablo Franco controlled, intended, or authorized the activity. Pablo Franco drove to work that day in his own vehicle, and he first heard about the accident when he got a call from his brother after Pablo Franco was already at the jobsite. We conclude that the trial court did not err in ruling that defendants could not be held vicariously liable for Ruben Franco's conduct.

Turning from plaintiff's vicarious liability arguments to his direct negligence claims, plaintiff argues that defendants failed to ensure that Covarrubias could get to work safely.

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). "[A]lthough *Fazzolari* has changed the role of duty in negligence law, it has not eliminated the rule that a defendant must have *some* responsible involvement with an event in order to be found negligent for its occurrence." *Fortney v. Crawford Door Sales Corp.,* 97 Or App 276, 280, 775 P2d 910 (1989) (emphasis in original). "[W]hen a claim for common-law negligence is premised on general principles of foreseeability, the plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman v. Mayfield*, 358 Or 196, 205, 361 P3d 566 (2015).

Here, plaintiff points to no evidence that Amberglen, Katerra, NW Framing, or Six Stars were aware of or involved with the commuting arrangement by which Covarrubias rode to work in Ruben Franco's van. Although Pablo Franco may have been aware of it, there is no evidence that anything he did or failed to do created a risk of harm to Covarrubias, or that it would have been foreseeable to him, or to Amberglen, Katerra, NW Framing, or Six Stars, that the van would be involved in a traffic accident. Although questions of causation and foreseeability are often matters for a jury to decide, here we agree with the trial court that plaintiff presented no evidence creating a triable issue of whether defendants' acts or omissions caused a foreseeable and unreasonable risk of harm to Covarrubias. *See Hefty v. Comprehensive Care Corporation*, 307 Or 247, 253, 766 P2d 1026 (1988) (affirming grant of summary judgment and noting that "a court can decide that no reasonable fact-finder could find the risk foreseeable" (internal quotation marks omitted)); *see also Bock v. Vigor Works LLC*, 343 Or App 514, 518, ___ P3d ____ (2025) (affirming trial court's

grant of summary judgment to a defendant on the plaintiff's common-law negligence claim because the plaintiff did not adduce evidence creating a jury question on foreseeability). Thus, the trial court did not err in granting summary judgment in favor of defendants on plaintiff's negligence claims against them.

In opposing the motions for summary judgment, defendant relied on article 3.3.1 under the general conditions of the prime contract between the owner, Amberglen, and the general contractor, Katerra. It provides:

> "Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, *transportation*, and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work."

(Emphasis added.) According to plaintiff, that contract provision gave rise to a triable issue of whether Katerra was responsible for worker transportation and whether it "shifted this contractual duty" to provide safe and adequate transportation to the subcontractors.

However, the trial court determined that the contract provision was not ambiguous, that it referred to work-related transportation, and that it was not plausible to interpret it as extending to commuter transportation or, in other words, the transportation of workers to and from their homes to the jobsite. As explained by the trial court, under article 3.3.1, "transportation" is included in a list of items that are "very normal" items a general contractor can be obligated to provide and pay for, but "transportation of all workers is a very uncommon obligation, and [it] is something one would expect to be called out with greater specificity." The trial court concluded that "[p]roviding free transportation of all workers from their homes to the jobsite is not necessary to the proper execution and completion of the Work," and that it was not covered by the contract provision.

We agree with that interpretation of the prime contract. A "contractual provision is ambiguous if its wording,

in context, is reasonably susceptible to more than one plausible interpretation." *Copeland Sand & Gravel v. Estate of Angeline Dillard*, 267 Or App 791, 794, 341 P3d 187, (2014), *adh'd to on recons*, 269 Or App 904, 346 P3d 526 (2015). "[T] o determine whether a contractual provision is ambiguous, the trial court can properly consider the text of the provision in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract." *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317-18, 129 P3d 773, *rev den*, 341 Or 366 (2006).

In our view, article 3.3.1 of the prime contract unambiguously refers to work-related transportation, not commuter transportation. Plaintiff claims that the provision is ambiguous because Amberglen argued in its summary judgment motion that Katerra was responsible for transportation. But that argument does not establish an ambiguity regarding the meaning of "transportation." Because the other listed items that the contractor must provide and pay for—"labor, materials, equipment, tools, construction equipment and machinery, water, heat, [and] utilities"—relate to the execution and completion of the work, it is not plausible to construe the term "transportation," as used in the provision, so broadly as to include commuter transportation to work. Put otherwise, it is not reasonable to interpret article 3.3.1 as requiring the general contractor or the subcontractors to provide and pay for transportation of workers from their homes to the jobsite. *See Copeland*, 267 Or App at 795 ("[t]the ability to identify multiple interpretations does not necessarily make the provision ambiguous").[2]

Plaintiff also relies on article 6.5.7.2.5 of the prime contract. It provides:

---

[2] Even if we were to conclude that the term "transportation" is ambiguous, plaintiff does not adduce extrinsic evidence to create a triable issue of whether Amberglen or Katerra intended for Katerra to provide and pay for commuter transportation. *See Copeland*, 267 Or App at 797 ("[I]t is the existence of competing extrinsic evidence—and the triable factual issue that the evidence creates— that, as a general rule, makes the resolution of the meaning of an ambiguous contract on summary judgment inappropriate, not the existence of an ambiguity itself." (Internal quotation marks omitted.)). And even if there was a triable issue of whether Katerra or the other defendants were required to pay or reimburse workers for transportation, it does not follow that they had a duty to provide workers with safe transportation from their homes to the worksite.

> **"The following are part of the Contractor's General Conditions and shall be treated as such pursuant to the Agreement:**
>
> "* * * * *
>
> "That portion of the reasonable expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work. Commuting expenses locally within the County of the Project locale (other than transportation to and from a remote lot) are specifically not reimbursable."

(Boldface in original.) That provision states that local commuter expenses are not reimbursable, and it does not expressly provide that nonlocal commuter expenses are reimbursable. However, viewing it in the light most favorable to plaintiff, we recognize that it could be interpreted to allow for the reimbursement of nonlocal commuter costs. Nevertheless, plaintiff presents no evidence that any defendant *did* reimburse employees for commuting costs. And a requirement to reimburse nonlocal commuter costs is not the same as a duty to provide commuter transportation or to ensure commuter safety. Considering that provision alone, or in conjunction with article 3.3.1, we agree with the trial court that it does not create a triable issue of whether defendants were required to provide transportation to work for their employees.[3] The trial court did not err in granting summary judgment in favor of defendants on plaintiff's negligence and vicarious liability counts.

*ELL Claims.* In counts three and four of the second claim, plaintiff sought to hold defendants liable under ORS 654.305 and ORS 654.310.[4] The ELL "imposes a heightened

---

[3] Plaintiff also refers to a "Site Specific Safety Plan" between Katerra and NW Framing, but its terms did not apply outside the jobsite. On appeal, plaintiff cites additional contract provisions but, having reviewed them, they do not create triable issues of material fact.

[4] ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

statutory standard of care on a person or entity who either is in charge of, or responsible for, any work involving risk or danger." *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003). In addition to a worker's direct employer, liability under the ELL can be imposed on an indirect employer. An indirect employer is a person or entity who or which "'(1) is engaged with the plaintiff's direct employer in a 'common enterprise'; (2) retains the right to control the manner or method in which the risk-producing activity was performed; or (3) actually controls the manner or method in which the risk[-]producing activity is performed.'" *Yeatts v. Polygon Northwest Co.*, 360 Or 170, 179, 379 P3d 445 (2016) (quoting *Woodbury*, 335 Or at 160).

Here, Covarrubias was commuting to work at the time of the accident. There is no evidence that he was engaged in work at that time, let alone work involving "a risk or danger," that the van was a place of employment, or that defendants had "charge of, or responsibility for" how Covarrubias commuted to work. *See* ORS 654.305 (requiring persons "having charge of, or responsibility for, any work involving a risk or danger" to take precautions); *see also* ORS 654.310 (imposing duty on persons engaged in the construction of buildings to ensure that "all places of employment" are in compliance with applicable orders and rules); *see also Snyder v. Seneca Lumber Co.*, 207 Or 572, 577, 298 P2d 180 (1956) (the ELL applies to "employments which are inherently dangerous").[5]

---

ORS 654.310 provides in part:

"All owners, contractors, subcontractors, or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all places of employment are in compliance with every applicable order, decision, direction, standard, rule or regulation made or prescribed by the Department of Consumer and Business Services ***."

[5] Relying on the definition of "[p]lace of employment" in ORS 654.005(8)(a), plaintiff argues that the van was a place of employment because "it is a movable or moving place where there is carried on any operation or activity related, either directly or indirectly, to an employer's business or occupation." But plaintiff does not explain what "operation or activity" was occurring in the van such that it can be considered a "place of employment." *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function

Plaintiff also fails to adduce evidence to create a triable issue of whether defendants retained the right to control, or actually controlled, the manner or method of Covarrubias's commute to work. To establish "that [the defendant] 'retained the right to control' the pertinent risk-producing activity," the plaintiff "must 'identify some source of legal authority for that perceived right' or present evidence from which a retained right to control can be inferred." *Sanford v. Hampton Resources, Inc.*, 298 Or App 555, 573, 447 P3d 1192, *rev den*, 366 Or 64 (2019).

Once again, plaintiff relies on article 3.3.1 of the prime contract between Amberglen and Katerra to argue that defendants had a duty to ensure safe transportation to work. In *Boothby v. D.R. Johnson Lumber Co.*, 341 Or 35, 42, 137 P3d 699 (2006), the court determined that the contract at issue was not ambiguous, and that the plaintiff could not rely on it to create a triable issue of whether the defendant retained a right to control how another entity operated logging equipment. Similarly, here, and as already explained, it is not plausible to interpret article 3.3.1 as imposing a duty on defendants to ensure a safe commute to work. Therefore, plaintiff cannot rely on that contract provision to argue that defendants retained a right to control how Covarrubias commuted to work. We conclude that the trial court did not err in granting summary judgment in favor of defendants on plaintiff's ELL claims.

Affirmed.

---

to speculate as to what a party's argument might be" nor "to make or develop a party's argument when that party has not endeavored to do so itself.").